THE heirs of James Wilson, exhibited their bill against Thomas Bodley and James Hughes, shewing that a tract of land of 800 acres was patented to John Harvie in 1791, who conveyed it, in that year, to Colonel William M’Kee, who conveyed 200 acres thereof to their ancestor James Wilson, who settled on the land in the year i792, and resided there till his death, and that his widow and family continued to occupy the land ever since; that Bodley and Hughes commenced their suit in chancery in the general court of this state, relying on an adverse entry and junior grant, against colonel M’Kee, for the whole 800 acres, and obtained a decree against him for the same, their entry having been adjudged valid ; that Bodley and Hughes hail obtained their writ of possession on the decree aforesaid, and thereby intended to turn the said heirs of Wilson out of possession \ that their ancestor *56 held the title descended to them by propeí* conveyance, long before the commencement of the suit in chancery by Bodley and Hughes, against colonel M’Kee l that their ancestor or themselves were not parties to the suit aforesaid, and were not bound or affected by the decree, and they pray that Bodley and Hughes may be restrained from executing the writ of possession upon them, and that their possession may be (juieted.
Bodley and Hughesanswered, and alleged that they did not know,till about the time, when they obtained the decree in the general court; that colonel M’Kee had ever conveyed away any part of the land, and that the suit was brought by consent and arrangement in the general court against colonel M’Kee, and that the now complainants below, or their ancestor, were privy to, and agreed to the arrangements, and attended to taking of depositions, and procuring evidence in the defence of the suit; and put intenogatories to the complainants, relative to the consent of themselves or their ancestor to the arrangements or agreements with colonel M’Kee, and their defence of the suit, and their taking testimony therein.
To these interrogatories, the complainants below answer, and deny any arrangement or agreement on the part of themselves and their ancestor, with M’Kee, relative to his suit for the land, with Bodley and Hughes, and also any authority in M’Kee to bind them by his agreements, or that they took any part in col. lecting evidence in the suit, other than as by-standers, while depositions were taking.
2.'After the suit, had remained sometime in this situation. and no testimony was adduced, conducing to shew that the heirs of Wilson ought to be bound by the decree of the general court against M’Kee, Bodley amended his answer, stating the death af Hughes, and that previous to his death, he had conveyed to him, Bodley, and exhibited a conveyance to that effect. He then set up his entry, and alleged it to be valid, and exhibited his survey and patent, and prayed that the land might be decreed to him on the original merits of the claim, by the strength of n Inch, a decree had been obtained against M’Kee, and makes his answer as a Crossbill.
The act of l809 — 1°.> dan,t m chahp«y 10 state riesm°hisah'. syrerand make it ad^Vbill g-ves the rights which the ““crossbUl has. accetding to the Kn¡?}isb *
r>Me complainant]? contest the validity of the entry, and rely on their elder title, and the possession with title, up wards of twenty years, before this controversy commenced.
3. The cause remained some time in this situation for preparation, when it was reached for trial, and the complainants, the heirs of Wilson, made default, and their bill was dismissed for want of prosecution, and a decree entered in favor of Bodley for costs ■Some two or three days afterwards, the counsel for Bodley appeared in court, and moved that the cause should be re.docketed. as to the answer of Bodley set. ting up the validity of his claim, as a cross bill, and that the matter -¡hereof should be tried. The court sustained this motion, and the cause was re-docketed and progressed ultimately to a final decision. To this order, continuing the cause and directing it to pro gress as to Bodley’s complaint, set forth in his an. sweras a crossbill, the complainants below, except•ed ; and this forms the first question presented by the assignment of error. I'his question arises out of peculiarity introduced into the chancery practice in this country by legislative provisions. Anciently, it was a rule inchancery. with exception as to cases of mutual accounts, and perhaps a few others, that the chancellor would not decree in favor of the defendant, although he might shew himself entitled to a decre® over touching the same subject matter, instead of the plaintiff. To remedy this, or to reach his matter of defence with greater ease and certainty, the defendant was allowed to file his cross bill against the complainant and to pray his appropriate redress. The subject matter of such cross bills, was, however, confined to the subject matter of the original bill, or facts which had a hearing on the claim or controversy advanced by it, and they were never allowed to set up claims distinct asid unconnected with the claim of the complainant, or which were not calculated to defeat it. The evil resulting from this practice, was another suit, distinct in its costs, and measurably so in its progress, though generally heard with, or at the same time with the original bill. To remedy this, and to condense the two suits into one, and measurably, if not entirely, to substitute the cross bill, was the design of the legislature in the provisions adopted at an early period, *58 fey whicfi Hie defendant in chancery was allowed t© exhibit interrogatories against, another defendant, or against the complainant, or against one not before a p'artv to the suit:
Consequently if be com the"V<nal biT ‘¡scontim.es his suit he do.-s put1 be' díf fe-. (!an , wlu.s;' an Miure of#1* ero!,* biti,out of court, but he may pro sTdecree ^ thereon i Dig. 228.
Although the legislarme in these provisions did not direct that such a proceeding.in express terms, should subs'itote or take place of a cross bill yet this measurabh resulted from them. J>u (e .this ( owl as early as the soring term 1808. in the rate of Myers vs. Baker and Owsley, Ha d. 547. adopted this construction as t]jp i-psup. and has said, that •* the act of assembly *1ils substituted 'hat p ‘acceding in the room of a cross-bill, and from the reason of tiie rase, all the consequ- iire-' must full uv it ” if there should he any doubt *u t'1‘s «’©nsti uetion of the original, and it should be su p <sed that this lutigtiage form- rly employed 1>; the court, carried the extent of this provision of the statute furthi»»' than its letter or spirit, the legislature, as if to swR,ft the doubt, ag -in took up the mutter, and in I«10 — . 4 Lit. 260, has declared, that 4* answers may state in. terrogatoriesto the complainant, and may make it an. swer as a cro-.s bill, if he [the (leí ’t chooses lo do so.” ]No\v it is well known, that (he dismission of an origi. nal bill, does not, per ss. dismiss the cross bilí under the awient practice, and that the chao ‘elJor rouid not refuse the redress sought bt it. merely because the original was abandone;!. If, therefore, the complainant in the original bill, under the present practice, should abandon his bill, we should not comply with the statute, by making the defendant’s answer, *• answer the purposes of a cross bill,’ if we say,that the relief of the defendant is in the power of the, complainant, and that he should commence de novo, and not have the redress, which a cross bill would ha\e afforded. Such a decision would only permit the interrogatories to answer as a cross bill, if the complainant pleased, and there iat no such conditionality in the words of the ¡Statute. We, therefore, see no impropriety in the court below, at the instance of the defendant, directing the cause to stand for trial as to his demand. We cannot perceive that such a practice will be attended with injustice or ¡much inconvenience. It may avoid multiplicity of suits on cases where the chancellor has complete jurisdiction of the demand of the defendant, as he h ad in; *59 this instance. This assignment of error is therefore overruled.
AVUia ?°an "a°med t0 re. cover laud fromonewho ^raTrTpossession prior t< the com-under a title from an adtheco^plainaut’s pwent was not 20 ^“hé°ime he COuimen. cert his suit, not ailITl4
4. On the final hearing of the cause, the court be low, on the merits of Bodley’s entry, decreed that the heirs of Wilson should surrender their legal title. To this decree, there are many exceptions taken by the assignment of error; but one of which need be noticed.
The entry set up by the appellee is one of 20,000 acres, in the names of John l'ihbs, John Clarke, John Sharp. David Blanchard and Alex’r. M’Ciain. made July 31, 1783, calling “ to begin at a large black ash and small buckeye marked I. T. on the side of a Buffaloe road, leading from Lower Blue Licks a north east course, and about seven miles N, E. by E. from said Blue Licks, on M’Connell’s fork of Licking,” and then it gives course and distance to the survey. This entry has been more than once held valid by this court, and has been sustained by the supreme court of the United Stales. The proof in this cause is equally strong and sati-factory in favo-- of the entry, as it was in 'the casts heretofore determined by the court. We. therefore, deem it unnecessary to travel into a' minute invesligation of it, or to repeat the reasons why we deem it valid. 'I ho court below, we conceive, did not err in deciding in its favor.
5. But the appellants pleaded and relied on the ad verse possession of more-han twenty years, before appellee set up-the validity of his claim in this suit, and this is retied on as one of the strong objections against the decree. When the proof is examined, it is conclusive on this point in favor of the appellants ; that they, or those from whom they derive title, have been upwards of twenty years in possession, coupied with the title of the adverse grant. This is admitted by the decree of the court below, and the reason why it is disregarded, as assigned by the court, is, that the patent of the appellee was not twenty years old when the claim was asserted in this suit. This i.s true; but the survey of the appellee was made before the ultimate period for survey ing some entries at least, had expired. The patent of the appellants, is far more than twenty years old, and the entry of the ap pellee still older, and the want of a patent twentyyears old. was held insufficient,to avoid the plea in case of Buttock, &c. vs. Overton, &c. and for the *60 sons assigned in that case, as well as the case of Braxdale vs. Speed, at the same term, the objection most be held fatal to the relief sought by the appellee.
The decree must, therefore, be reversed with costs, and the cause remanded, with directions, there to, (list, ¡miss the appellees’ cross bill, with costs.