## VICTOR LADNER et al. *v.* R. N. OGDEN et al.

1. CHANCERY—PRACTICE.—The clerk has no right, in vacation, to dismiss a bill in chancery, upon the order of complainant, unless the costs be first paid, or secured to his satisfaction.

2. SAME.—The letter of the complainant or his solicitor, filed with the clerk of the court in vacation, directing a dismissal of the bill, will not have the effect to dismiss the bill, unless the costs be paid or secured.

3. SAME : CROSS-BILL.—By the general rules regulating chancery practice, a defendant has no right to make new parties to the suit by his cross-bill; and the same rule prevails where the answer is made a cross-bill, under the statute. Hutch. Dig. 770, art. 12, § 1.

4. SAME.—The statute, which enables a defendant to a bill in chancery to make his answer a cross-bill, without service of process on the defendants to the cross-bill, "unless new parties be introduced," does not authorize the making of persons parties to the cross-bill who were not parties to the original. The parties therein referred to as "new," and upon whom service of process is not dispensed with, are those of the defendants to the original suit, who are also made defendants to the cross-bill.

5. SAME.—Where a cross-bill is filed for relief, separate and independent of the

Ladner et al. *v.* Ogden et al.

original bill, and involving the rights of co-defendants to the original bill, although touching the same property, and growing out of the same subject-matter litigated in the original bill, the dismissal of the latter would not necessarily dismiss the former; but where the cross-bill has direct reference to, and involves only some collateral right affected by the relief sought in the original bill, it must be considered as in the nature of a defence to the original suit, and would necessarily fall by an abandonment and dismissal of the original bill.

In error from the District Chancery Court at Mississippi City. Hon. B. C. Buckley, vice-chancellor.

A full statement of the facts will be found in the opinion of the court.

*John Henderson*, for plaintiff in error.

*Fulton Anderson*, for defendant in error.*

Smith, C. J., delivered the opinion of the court.

This bill was filed in the Vice-Chancery Court of Mississippi City, by John Ramon, against Robert N. Ogden and others, the appellees.

The object of the suit was to establish the complainant's title to certain real property, situated in the town of Shieldsborough, Hancock county, held adversely by the defendants, and to recover possession of the same.

To render intelligible the questions presented by the record, a brief recital of the material facts, as they are alleged in the bills, answers and cross-bills, is indispensable.

By the bill, it appears that the complainant, Ramon, in 1821, at New Orleans, in the State of Louisiana, intermarried with Madame Marie Susanna Lochonne, the widow of Jean Batiste Morin. At the time of their marriage these parties were permanently domiciled at Madisonville, in said State, and had entered into a marriage contract, which was executed before a notary public, in said city. This agreement, in the form in which it was executed, is styled, under the law of Louisiana, "an authentic act," being a record

* No memorandum of the argument of counsel has come into my possession.— Rep.

from the time of its execution.   By this agreement, amongst other stipulations, it was provided that, "on the death of either party to the marriage contract, without child or children of the marriage living, the surviving spouse should have and hold all the property, of every description, of the deceased, in full right and title."

No child was born of this marriage, and in April, 1837, Madame Ramon died at their residence in Madisonville, leaving no lineal descendant, and no collateral relatives within the United States, entitled as her heirs at law, except her said husband; who, by virtue of the marriage agreement, and of the statute, claims to be the sole successor and inheritor of her estate.

Madame Ramon, who, previous to her marriage with complainant, was known as "the widow Morin," was a settler upon the public lands of the United States, situated near the mouth of the Bay of St. Louis, in Hancock county, in 1813.   By the second section of the Act of Congress of the 28th of May, 1830, her act of settlement was recognized and confirmed, as a donation claim to six hundred and forty acres of land—to include her improvements. And Congress, by law, further provided for the fixing and ascertainment of the boundaries of this claim, and other claims similarly situated, by a survey, to be made by the proper officer.   And further, upon such survey being duly made, returned and approved, according to the law, it was provided, that a certificate, commonly called a patent certificate, should be issued to the donee; and upon the approval of such certificate by the commissioner of the general land office, a patent from the United States was to issue to ,the claimant and his legal representatives.

Pursuant to these regulations, a warrant for the survey and location of the claim of the "widow Morin," issued from the land office at Augusta, in Mississippi, on the —— day of ——, 183–, and was placed in the hands of the defendant, Elihu Carver, who was then a deputy surveyor of the United States for the district, to be executed.

The location and survey were duly made, by the said Carver, on the 30th of November, 1833; which, being returned to the proper office, was duly approved by the surveyor south of Tennessee, on the 21st of December, 1840.   And on the 28th of June, 1852,

a patent certificate was awarded on the said claim; upon which, a patent from the United States was issued, on the 15th of July following, to the said "widow Morin, or to her legal representatives."

The widow Morin was dead when the patent certificate and the patent from the United States were issued; and Ramon, as her alleged legal representative, by virtue of the statute and the stipulations contained in the marriage agreement, claimed the land by direct grant from the United States.

It appears, further, from the statements of the bill, that the defendant, Carver, having, in his official capacity as a deputy surveyor of the United States, possession of the warrant of survey, by means of false, delusive, and unfounded statements, made with a view to his individual benefit, induced complainant's wife, the "widow Morin," to make an assignment or transfer to him, of one-half of said claim, which transfer was indorsed upon the warrant of survey; Carver well knowing her incapacity, arising from coverture, to execute such conveyance. That by like means, and for the same purpose, said Carver induced Madame Ramon to convey by deed the said land to his infant daughter, Honoria Carver; and that by similar practices, and without any consideration paid therefor, said Carver subsequently procured a deed for the east half of said land, to be made to him by his said daughter and her husband, Victor Ladner; the said Ladner and his wife being, at the date of their deed to Carver, infants, within the age of majority. And further, that Carver, having thus acquired a pretended title, as alleged, laid claim to the *eastern* half of the land donated to Madame Morin, and sold and conveyed divers portions of the same to different individuals. These persons, or their vendees, are the parties in possession, and holding adversely to the complainants, against whom, including Carver, Ladner and wife, relief is prayed by the bill.

All of the defendants except Ogden, Carver, Ladner and wife, filed a joint demurrer to the bill. Ladner and wife neither answered nor demurred. Ogden answered, making his answer a cross-bill against Ramon, the complainant, John Henderson, his

solicitor, Victor and Leon Ladner.   The last of whom, as well as
Ramon's solicitor, was not a party to the original bill.

Carver also filed a separate answer to the bill, which is made a
cross-bill against the complainant alone.

From the peculiar phase which this controversy has assumed, it
will be necessary to notice the statements in the answer of Ogden
made in response to the allegations of the bill.   It will be sufficient
to refer to those averments in the answer upon which relief is
sought, as upon a cross-bill.

It is averred in the answer that the complainant, Ramon, pre-
vious to the institution of this suit, had divested himself of all right,
title or interest, in the subject-matter thereof.

That if it be true, as alleged in the bill, that a marriage contract
was made between complainant and Madame Morin, before their
marriage, under the laws of the State of Louisiana, where the con-
tract is alleged to have been entered into, she retained the right,
not having expressly relinquished it, to dispose of all of her separate
property at any time during her life time.

That complainant well knew, that his wife did, during her life
time, convey away all her interest and title, in the manner before
stated, to the said land; and well knew the same at the time such
transfers or conveyances were made, and fully approved and sanc-
tioned the same; that neither during her life, nor subsequently,
until the filing of his bill, did he ever question their validity; and
that he never would have sought to disturb defendant and others
who had purchased in the faith of the transfers made by his wife,
with his knowledge and consent, had he not been deceived and
led to do so by the false and wicked machinations of others.

That Victor Ladner, one of his co-defendants, and defendant in
the cross-bill, having got possession of the patent for the land, in-
duced Ramon to confirm the conveyance made by Madame Ramon,
in 1836 to said Ladner's wife, and to agree that a suit should be
brought, in his name, for the recovery of all of the land which the
defendant, Carver, had sold and conveyed to the defendants; pro-
vided the suit should be conducted without charge to himself, and
for the exclusive use of said Ladner's wife; and that complainant
would, by suitable conveyances, transfer all the property which

might be recovered in the suit, to the wife of said Ladner, and her six infant children by name; and further, that instruments were executed, by complainant, and duly attested by witness, for the purpose of carrying into effect this arrangement.

It is further alleged, that several instruments in writing, executed for the purposes aforesaid, are either in the possession of Victor Ladner, or of Leon Ladner, alleged to have been appointed his attorney in fact by Ramon, or in the custody of the solicitor, Henderson. These instruments are alleged to be fraudulent, illegal, and void, and constituting a cloud, and casting a suspicion upon the defendant's title, they are prayed to be delivered up for cancellation.

The answer and cross-bill of the defendant, Carver, present no grounds for relief in addition to those set up in the cross-bill of the defendant, Ogden, the material portions of which we have extracted.

Ramon filed separate answers to the cross-bills. They contain a substantial admission of the allegations of the cross-bills, and amount to a surrender or abandonment of the claim asserted in complainant's bill. In fact, the complainant, from some cause, appears to have entirely altered his position in relation to the controversy, and declares his willingness that the suit, in order to quiet the title of defendants, should be dismissed; and further, that the instruments executed by himself, and referred to in the cross-bills, should be declared void, and delivered up for cancellation.

Ramon's answer to Carver's cross-bill, was filed on the 13th of October, 1854. He had, however, on the 2d of February preceding, given written instructions to his solicitor to withdraw all proceedings entered in his name, in the Vice Chancery Court, against the defendants. And pursuant to these instructions, his solicitor, on the 16th of February, 1854, had filed an order directing the clerk to dismiss this suit, at the cost of the complainant.

On the 17th of April, 1854, his solicitor, by entry of record, withdrew from the case. Of the same date appears a motion, by the defendant Ogden, for a judgment *pro confesso*, for want of an answer, against Ramon, the complainant in the original bill, John Henderson, his solicitor, Victor Ladner, one of the defendants in

VOL. II.—22

the original bill, and Leon Ladner, the defendants to Ogden's cross-bill.

A judgment, *pro confesso*, was accordingly entered against these parties. Following this judgment, is an entry, in which it is recited "that in compliance with the order of John Henderson, solicitor, made on the 16th of February, in consequence of the letter of Ramon to him, of the 2d of February last, and both on file, it is ordered that complainant's bill be dismissed as to all of the defendants, except Ogden and Carver, who have filed cross-bills, as to whom the bill is retained, by the subsequent consent of complainant, Ramon, in order to enable the court to decide upon the issues raised by said bill, cross-bill, and answers."

A final decree was rendered against the defendants to Ogden's cross-bill; by which Ramon, complainant in the original bill, was ordered to convey to Ogden and Carver, by deed of release and quit claim, to enure to the benefit of all the defendants in the said original bill, and of all persons holding under said Carver, according to their respective interests, that certain tract of land, &c., being the east half of the land embraced in the order of survey, (No. 672,) referred to in the complainant's bill; which east half was, on the 21st November, 1833, sold and conveyed to said Carver, by the "widow Morin," then wife of complainant, &c. And further, "that the several instruments of writing signed and executed by the said John Ramon, as described in the cross-bill and interrogatories of said R. N. Ogden; and in the answer of said Ramon to the cross-bill and interrogatories of said Carver; and in the exhibit filed with said Ramon's answer to said cross-bill; and in particular, an act or instrument bearing date the 28th of March, 1853, by which said Ramon appointed Leon Ladner his agent; and another instrument bearing date the 28th July, 1853," be declared "null and void, and of no effect, so far as they relate to or in any wise affect the land which, by this decree, the said Ramon is ordered to convey to said Ogden and Carver."

An appeal to reverse this decree is prosecuted by Leon and Victor Ladner and John Henderson, by whom it is insisted:—

1. That it was illegal and erroneous to render any decree upon

Ladner et al. *v.* Ogden et al.

the cross-bill against the defendants thereto, after the order for the dismissal of the suit was filed by Ramon's solicitor.

The dismission of the original bill would carry with it the cross-bills, and thus, of necessity, put an end to the whole proceeding. The validity of this exception, therefore, depends upon the question, whether the suit should be held as dismissed, upon the filing of the order for that purpose.

Upon the motion of the plaintiff, an order will be made, as a matter of course, granting leave to dismiss, with costs, at any time before decree. The reason for this rule is, that the complainant can always effect the same object, by a simple failure to prosecute the suit. The court may, however, annex such conditions to the order for a dismission as the circumstances of the case require. Danl. Ch. Pr. 929.

The cause was not dismissed by order of court made in term time. But the statute gives the right to the plaintiff, in any cause pending in any court in this State, to dismiss the same before the clerk of such court in vacation. And it is, under the provisions of this statute, contended that the dismission was bad.

The act requires the clerk of any court to permit the plaintiff, or his attorney, in any pending cause, to dismiss the same out of term time, upon payment of the costs, or securing their payment to the satisfaction of the clerk. Hutch. Dig. 889, 895, art. 12, 21.

According to the plain construction of the act, the order for the dismissal cannot be considered as constituting in itself a dismission of the suit. No entry to that effect was, in fact, made by the plaintiff, or the clerk, which the statute seems to require.

The right to dismiss in vacation is given by the act; and the conditions upon which it may be exercised are expressly laid down.

The costs which have accrued at the time of the application to dismiss is made, must be paid, or secured to the satisfaction of the clerk. Without the performance of these conditions the clerk has no power to permit a cause to be entered or dismissed out of term time. It is no argument to say, that because, in term time, a motion for leave to dismiss by plaintiff, at his own costs, is always, before decree, granted as a matter of course, he should have the right to dismiss in vacation on the same terms. The right in the one

case depends upon a rule of practice established by the Chancery Court; in the other it depends on the express provisions of the statute, which has laid down the conditions. If the clerk in the case before us, had entered the cause as dismissed in vacation, without payment of the costs, or security for their payment, the dismission would not have been set aside at the succeeding term, unless for good cause shown; for the reason, the plaintiff might then, upon motion, have dismissed the suit, without either paying the costs or securing their payment. As it was, the clerk did not see proper to dismiss the cause; and we cannot say that it ought to be held as dismissed from the time the order for that purpose was filed.

2. It is next insisted that it was irregular and illegal for the defendant, Ogden, to make persons who were not parties, either plaintiffs or defendants to the original bill, defendants to the cross-bill.

" A cross-bill *ex vi terminorum*, implies a bill brought by a defendant in a suit, against the plaintiff in the same suit, or against other defendants in the same suit, or against both, touching the matters in question in the original suit." Story, Eq. Pl. § 389. A cross-bill is generally considered as a defence to the original bill, or as a proceeding necessary to a complete determination of a matter already in litigation by the parties thereto. Hence a cross-bill should not introduce new and distinct matters not embraced in the original suit; for as to such matters it is an original bill, and they cannot be properly examined at the hearing of the original suit.

The rule on this subject, and the reason on which it is founded, are stated with great clearness by the Supreme Court, in *Shields et al.* v. *Barrow*, 17 How. (S. C.) R. 130. The court say, " New parties cannot be introduced into a cause by a cross-bill. If the plaintiff desires to introduce new parties, he amends his bill and makes them. If the interest of the defendant requires them, he takes the objection on nonjoinder, and the plaintiff is forced to amend, or his bill is dismissed. If, at the hearing, the court finds an indispensable party is not on the record, it refuses to proceed.

These remedies cover the whole subject; and a cross-bill to make new parties is not only improper and irregular, but wholly useless."

But our statute is supposed to have altered the rule of practice in this respect, and to have authorized the introduction of new parties in a suit by the answer, where the answer is made to assume the character of a cross-bill.

The object of the act manifestly was, to enable defendants, with less trouble and at less cost, to effect the same objects through the medium of an answer, framed with proper allegations and averments, which could, under the existing rules of practice, be attained only by means of a cross-bill. This appears to have been the sole purpose of the legislature, and not in any wise to alter the principles of practice in reference to cross-bills.

The act provides that the defendant in a chancery suit may introduce any new matter material to his defence, and require the complainant, if deemed necessary, to answer the same on oath; under the same rules and regulations as a defendant is now compelled to answer the bill of complaint, and with the same effect; and that "any defendant or defendants may, if he, she, or they choose, make his, her, or their answer a cross-bill against the complainant or complainants, or against his, her, or their co-defendants, or defendants, or all of them, upon which no subpœna shall be required to issue, unless new parties are introduced."

The statute is express and explicit in regard to the parties who may be made defendants, when the party filing his answer shall choose to make it a cross-bill. These are the complainant or complainants in the original bill, and the co-defendant or defendants of all of them. But the provision which dispenses with process, "unless new parties be introduced" by the answer as a cross-bill, is relied on as an affirmative declaration that such parties might be introduced.

It is improper and illegal to introduce new parties into a cause by a cross-bill. It is not, therefore, to be supposed, that the legislature intended to authorize a defendant to do that by an answer, when he should choose to make it a cross-bill, which he could not do by a cross-bill itself. Certainly such a construction ought not to be adopted, unless the language of the act plainly excludes any

other interpretation more in harmony with what may legitimately be assumed to be the intention of the legislature.

The defendants to a bill are brought into court to answer the allegations of the complainant, and not upon any matter in contest between themselves. When, therefore, a defendant, in his answer as a cross-bill, prays relief against his co-defendants, thus raising a new issue as to them, it is proper that they should have notice, by process, as in ordinary cases. It is manifest the same reason does not exist for giving notice, by process, to the complainant when made defendant. He is presumed, as he is bound of necessity, to know the matters alleged in the answers of his adversaries. The words, "unless new parties be introduced," must be understood as referring to the co-defendants in the original bill, when made defendants to the cross-bill; and not as sanctioning the introduction, in this way, of new parties in a cause, and thus innovating upon a well settled and salutary rule of practice.

Assuming this to be the proper construction of the statute, it was improper and illegal for the court to entertain the cross-bill of the defendant, Ogden, by which new matter was introduced, and new and distinct issues were raised between parties who were strangers to the original bill; thus assuming, in every material particular, the essential features of an original bill, and presenting a new and distinct case for the consideration of the chancellor. It is true, that no exception was taken by defendants to the cross-bill by demurrer, or otherwise. But we cannot sanction a proceeding in which the settled rules of practice have been so entirely disregarded.

3. It is insisted in the next place, that the decree was erroneous and void, because it was rendered against Victor Ladner, as to whom the original bill had been dismissed, before the hearing.

This objection is clearly well taken. The dismissal of the original bill, as to any of the defendants, before the final hearing, necessarily put an end to the proceeding, as to them. If the original bill had been dismissed, as to all of the defendants, such dismissal would necessarily have carried with it the cross-bills of the defendants, Ogden and Carver. Hence, a dismission, as to any of the defendants, must have the same effect as to them, al-

though made defendants to the cross-bills. · For otherwise, a cross-bill would effectually be converted into an original bill; changing entirely the character of the issues, and depriving a defendant to the cross-bill of the benefit which might result to him from the statements contained in the original bill. A defendant would thus be excluded from any proper defence which he might have against the complainant in the original bill, and which might be made available as a defence to the cross-bill. It was therefore erroneous to enter up any decree whatever against the defendant, Victor Ladner, against whom the bill had been dismissed before the hearing.

4. There is another objection fatal to the decree. A *pro confesso* was taken against the complainant, Ramon, upon the cross-bill of Ogden, although Ramon's answer to the cross-bill was on file at the time when the *pro confesso* was taken.

5. We are not distinctly in possession of the character and nature of the instruments decreed to be cancelled. It is manifest, however, from the allegations of Ogden's cross-bill, that rights, either legal or equitable, were claimed and asserted under them by Mrs. Victor Ladner and her infant children. These persons were not made parties to the cross-bill of Ogden. In fact the original bill had been dismissed, as to Mrs. Ladner, before the hearing. It was therefore clearly illegal and incompetent to enter up any decree by which their rights would be affected.

For these errors the decree should be reversed. But it is insisted that the decree should not only be reversed, but the bill be dismissed.

Ramon's answers to the cross-bills of Ogden and Carver, abandon all claim he may have had to the subject-matter of the contest. There can be no doubt, that in equity, they would be held tantamount to a surrender of his interest in the property, in favor of the various defendants to the suit. For any practicable purpose, therefore, so far as Ramon himself is concerned, a further prosecution of the suit is not desirable to any of the defendants. Indeed, it is manifest, that it is not Ramon's title which they wish to conclude, or get rid of; but the claim or title, whatever it is, which is held by Mrs. Victor Ladner, and her infant children,

in virtue of certain instruments executed by Ramon, and alluded to in the cross-bills. But the original bill has been dismissed, as to Victor Ladner and wife, by the act of the defendants themselves, as we must suppose, with the consent of Ramon. For it cannot be pretended that the order of dismissal, as it was entered, was authorized by Ramon's solicitors; and as it would be incompetent to make the children of Mrs. Ladner parties by, and to an amended cross-bill, the object sought to be obtained can only be effected by means of an original bill against the proper parties.

Upon this view of the subject we order a reversal of the decree of the vice-chancellor, and direct the bill to be dismissed, without prejudice to either party.

*Fulton Anderson,* Esq., counsel for defendants in error,

Filed a petition for re-argument, in which he insisted, that the opinion of the court was correct, when applied to cross-bills, filed for defence only. But when the cross-bill was filed for independent relief, although touching the same subject-matter embraced in the original suit, it must be regarded as in the nature of an original bill. That by the English practice, a cross-bill for relief might be filed in a different court from the one in which the original was filed, and that a dismissal of the latter was not a dismissal of the former; and that it was not only allowable to introduce new parties by the cross-bill, but essential, where they had such an interest in the relief prayed for in the cross-bill as would entitle them to litigate it. And he cited the following authorities. Cooper, Eq. Pl. 85, 86, 87; Story, Eq. Pl. §§ 389–902; *Curd et al.* v. *Buford,* 1 Dana, 354; *Wickliffe* v. *Clay,* Ib. 589; *Sharpe* v. *Pike's adm'r,* 5 B. Monroe, 155; *Wilson's Heirs,* 2 Littell, 58; *Calverly* v. *Williams,* 1 Ves. Jr. 210; *Walker* v. *Brunyard,* 13 S. & M. 723; but—

PER CURIAM.—When a cross-bill is filed for relief, separate and independent of the original bill, but touching the same property, or growing out of the same subject-matter involved in the original bill, and involving the rights of the co-defendants to the original bill, the dismissal of the original bill would not necessarily dismiss

the cross-bill; because, it is, in legal effect, more of the nature of an original than of a cross-bill. But when it has direct reference to the relief sought in the original bill, and is rendered necessary by reason of the original bill involving some collateral right, affected by the relief sought in the original bill, it is to be considered as in the nature of a defence to the original bill; and when the claim therein asserted has been abandoned by the dismissal of the bill, the cross-bill would fall with it. And if there be other matters of collateral relief, touching the defendant's title, he should be driven to his original bill, especially when strangers are involved in the matter. And that appears to be the attitude in which the cross-bill in this case is presented.

The application for re-argument is denied.