## D. L. BURFORD v. ELIZABETH C. KERSEY et al.

1. CHANCERY PRACTICE—MULTIPLICITY OF SUITS.—A party who has failed to assert and litigate a claim or allowance in a suit in which he might with propriety have done so, will not be permitted to litigate it in a second suit, unless his failure to do so in the first was caused by the fraud of his adversary and not by his own negligence. See Stewart et al. v. Stebbins et al. 30 Miss. 66.

2. CHANCERY PRACTICE.—The rule of practice which requires notice of supplemental and amended bills, applies with equal or greater force to cross-bills, in which case a *pro confesso* without service of process or notice is irregular.

3. SAME.—The time within which a cross-bill may be filed rests in the discretion of the court.

APPEAL from the chancery court of De Soto county. SIMMONS, Chancellor.

The facts appear in the opinion of the court.

*Powell & McKenzie,* for appellant.

A party failing to assert a claim in a suit in equity, in which it might have been litigated with propriety, will not be permitted afterwards to enforce it in a second suit, unless the failure to do so was caused by the

fraud of his adversary. See Stewart v. Stebbins, 30 Miss. 66.

It may be alleged that the purchase of the land was a partnership purchase between Everson and Mrs. Kersey. Does that give Mrs. Kersey any advantage over Burford? Is there any principle of law that requires the debt due from one partner to another, to be paid in preference to the individual debt of one partner to a third party? Surely not.

The land, in point of fact, was not purchased in partnership. The bill alleges that defendant in error and plaintiff purchased, in partnership, from Thornton, administrator, the lands for the sum of $2,160, half cash, the balance on a credit. Mrs. Kersey paid Thornton $540 in cash, being half of the cash payment; Everson paid $110, leaving a cash balance still due of $430. The bill further alleges that the parties continued to work said farm after their joint purchase. The answer admits that the land was purchased as charged, and alleges that Everson had an undivided half interest in the land. The proof shows that the land was purchased jointly, each party to furnish an equal amount to pay the cash payment, and each party to pay one-half of the deferred payment. Mrs. Kersey paid her half of the cash payment; Everson paid part only of his, and gave a note for the deferred payment.

*Walter & Scruggs,* for appellees.

When the interlocutory decree was rendered, Kersey and wife had virtually withdrawn from the suit. No decree could have been rendered against them. personally. It was a proceeding thereafter, and in fact from the first, *in rem.* When the cross-bill was afterwards filed by Burford, setting up matter entirely new in the case, they should have had notice, and any decree taken against them is a nullity.

In Ladner v. Ogden, 31 Miss. 332, and at 342, the

court say: "The defendants to a bill in chancery are brought into court to answer the allegations of the complainant, and not on matters in contest between themselves. When, therefore, a defendant prays relief against his co-defendants, thus raising a new issue as to them, they should have notice as in ordinary cases." It is not so as to the complainant, as he is presumed always to be present. This court has decided (Mezeix v. McGraw, 44 Miss. 100) that even when an amended bill is filed, no decree can be pronounced without notice to the defendant or his solicitors.

A party must have notice of some sort. Englehard et al. v. Sutton, 7 How. 99.

See, to the point in this case, Ward v. Davidson, 2 Marsh. 443; Talbot v. McGehee, 4 B. Mon. 375; Crandal v. Gallup, 12 Conn. 365.

Story, in his Eq Pl., § 395, says: A cross-bill cannot be filed after publication; much less, we insist, can it be filed after inter-decree.

The court very properly decided that Kersey and wife, having had no notice of the cross-bill, could not be bound by any decree in respect to it.

But again. In order to render a former decree conclusive, even between the same parties, it must appear that the precise point was in issue, and this must appear from the record. Kennedy v. Schovel, 14 Conn. 61; Clinton v. Chambless, 6 Rand. 86.

Take this decision in connection with the case of Fisher v. Leach, 10 S. & M. 313, and Armfield v. Nash, 31 Miss. 361, that where a right is not pleadable, because of some matter that could be set up in abatement, etc., cannot be concluded by a decree or judgment in reference to it between the same parties.

TARBELL, J.:

This case is believed to be more complicated than difficult, and the single question, when evolved, is, in

this court, not an open one. Mrs. Kersey and Thomas
M. Everson were co-partners in planting, in 1866, on a
plantation belonging to the estate of Thomas Everson,
deceased. In 1867 Mrs. K. and said Thomas M. pur-
chased said plantation in partnership, at the adminis-
trator's sale, for the sum of $2,160, of which one-half
was to be paid in cash and the balance in twelve
months. Mrs. K. paid in cash one-half the cash pay-
ment. Everson paid only $110, and they gave their
joint note for the residue of his half. For the deferred
payments they executed their note and received a
deed for the lands from the administrator; all of
which was approved by the probate court. Mrs. K.
and Thomas M. continued their farming operations dur-
ing the years 1866, '67, '68 and '69, when they sold out
their partnership effects to close the partnership, owing
to the dissipation and insolvency of said Thomas M.
After the conveyance to Mrs. K. and Thomas M., the
latter conveyed his interest in the land to K. L. Bur-
ford to secure a debt for a loan of money due to D. L.
Burford, with power of a sale without the aid of a
court.

On the 17th day of October, 1870, Mrs. K. filed in
the chancery court of De Soto county, her bill of com-
plaint against said Thomas M. Everson, her co-partner
in planting, D. L. Burford, K. L. Burford, trustee, and
M. A. Thornton, administrator, stating the foregoing
facts, and further, that Thomas M. Everson was largely
indebted to her on partnership transactions; that he
had paid on purchase price of plantation only $110;
that she was responsible for the whole amount due on
the purchase, and the administrator looked to her for
its payment; that she held a judgment against the
estate, which she tendered and asked to have allowed
in payment of her indebtedness; that the conveyance
of Thomas M. Everson to Burford was fraudulent, and
a cloud upon her title; and she prays for an account

between herself and said Thomas M.; that said
Burford be enjoined from selling under his trust deed,
and that the same be canceled; that the administrator
of Thomas Everson, deceased, be required to apply the
judgment aforesaid in payment of her indebtedness to
the estate; and that she be decreed to have the in-
terest of Thomas M. Everson in the partnership
plantation. Burford appeared and answered, asserting
the good faith of his loan to Everson, and of the trust
deed to secure the same. Everson did not appear,
and decree accordingly as to him.

The special commissioner appointed for that purpose,
reported $1,696.51 due from Everson to Mrs. K. This
report was confirmed, and Everson was decreed to pay
that sum, or that execution issue. It was further
decreed, that Burford "pay into court, for the use of
complainant, the sum of $249.50, the sum of money
heretofore paid. him out of the sale of the partnership
land, and to which complainant  *  *  *  is properly
entitled." This decree was rendered August 6th, 1872.
From this decree, as to him, Burford appeals to this
court, and the question here is, whether the decree
requiring him to refund the $249.50, is erroneous?

In elucidation of this point, the further facts may
now be stated:

On the 14th day of October, 1870, M. A. Thornton,
administrator of the estate of Thomas M. Everson,
deceased, filed his bill of complaint against T. M.
Everson, James Kersey and Elizabeth C. Kersey, his
wife, to enforce payment of purchase money of planta-
tion sold by him to the respondents, stating sale in
1867, for the sum of $2,160, one-half to be paid in cash,
and the other half on a credit of twelve months; that
of the one-half cash payment there was left unpaid
$430, for which the parties executed their note,
payable one day after date; that there was left un-
paid of the purchase money, in all, $1,510, secured by

three notes, viz.: the above for $430, and two for
$540 each for deferred payment; that a deed was
executed by the administrator to the parties, which
was confirmed by the court, and the said parties took
possession of the land; that the purchase money has
been long due; and prays for a decree of payment or
sale. Everson did not appear. Mrs. K. and husband
appeared and answered, but subsequently withdrew
their answer, and consented to a decree of sale in
thirty days. A decree *pro confesso* was taken as to
Everson, and an interlocutory decree in the cause, re-
citing the allegations of the bill; the appointment of a
commissioner to report the sum due; the confirmation
of the report, and decreeing a sale of the land in
default of payment of $1,811.40 in thirty days. This
was done January 25th, 1871. On February 3d, there-
after, D. L. Burford filed his petition to be made a
party defendant to this action of the administrator.
This petition sets forth the sale of the land to Mrs. K.
and Everson; the reported payment of half cash; the
loan to Everson and trust deed on his interest in the
land; his good faith and ignorance of the non-payment
of the whole of the cash portion of the purchase price;
and prays leave to answer. Burford, in answer to his
petition, was made a party defendant with Everson
and Mrs. K., at the suit of Thornton, administrator,
and the interlocutory decree was modified so as to
direct the commissioner appointed to make the sale of
the land; that in case the land should "not sell for
enough to pay both debts mentioned in said decree, and
the debt due Burford, secured by the trust deed, that
then the commissioner shall hold the balance of said
purchase money, after paying the note for the deferred
payment, until the further order of the court, and the
question as to whether the note mentioned in said
deed of trust, covering T. M. Everson's interest in same
and the note taken by said administrator, should be

first paid out of the proceeds of the sale of said land."

Burford answered, asserting the *bona fides* of his loan to Everson and of the deed of trust, and of his ignorance of the non-payment of the whole of the cash payment on the land by Mrs. K. and Everson, and, being sworn as a witness in the cause, testified to the same facts.

The sale of the land, by order of the court, in the suit of Thornton against Everson et al., took place May 1, 1871, and sold for $2,010. The sale was confirmed, and the commissioner was directed to pay Burford $249.50, the debt due from T. M. Everson. This was in August, 1871.

As before stated, the decree in the case at bar, viz., the case of Mrs. Kersey and husband against Burford, Everson and Thornton, administrator, requiring Burford to refund this sum of $249.50, was rendered in August, 1872. In the case at bar, the proceedings and record in the case of Thornton, administrator, against Kersey et al., were submitted as evidence therein. Both causes were in the same court and heard by the same chancellor.

A material fact remains to be stated, viz.: that the answer of Burford, filed by leave of the court on his petition for that purpose, in the case of Thornton, administrator, against Kersey et al., was made a cross-bill, requiring answers from all the other parties, complainant and defendant, in said cause, but that no process was ever issued thereon, nor was notice thereof ever given to or served upon Mrs. Kersey or her husband, or any of the parties thereto, so far as appears in the record, and without such process or notice the cause proceeded to a final hearing and decree in the absence and without the knowledge, so far as is shown, by the parties most interested, viz., Mrs. Kersey and her husband. And this presents the point in the case.

From the decree in the case of Mrs. K. and husband against Burford et al., requiring Burford to restore the $249.50 allowed him in the other cause, he, having appealed, assigns for error only the rendition of said decree appealed from.

We are referred by the appellant to a single rule stated in Stewart et al. v. Stebbins et al., 30 Miss. 66, viz.: that a party failing to assert a claim or allowance in a suit in equity, in which it might have been litigated with propriety, will not be permitted afterwards to enforce it in a second suit, unless his failure to do so in the first was caused by the fraud of his adversary, and was not attributed to his own negligence. The soundness of this rule is recognized, but it is believed not to apply to the case at bar, for the following, among other reasons:

1. As to the $249.50, Mrs. K. was defendant, and not claimant, in the case of Thornton against her and others. It was not for her to present, but to resist, and therefore not her duty to bring forward in that suit the matter in controversy in this.

2. So far as she was concerned, and as far as she knew, the suit of Thornton, administrator, against her and her husband and Everson, had been concluded, and she had retired from it, supposing it to be closed by the interlocutory decree, upon her assent, as the basis of a final decree; after which, without notice to her, and without her knowledge, Burford was made a co-defendant, and allowed to file an answer, which he made a cross-bill; upon which, without process or notice to the defendants therein, the case proceeded to final decree, wherein Burford was awarded the $249.50, as before stated.

Being ignorant of the proceedings of Burford, she could not litigate this claim of his in the suit in which be preferred it, and is not, therefore, obnoxious to the rule invoked by counsel for the appellant, because the

neglect to litigate is not attributable to her negligence.

3. Upon the cross-bill of Burford process to bring in the defendants therein was necessary. Code of 1857, art. 51, p. 548; Code of 1871, § 1030; 2 Dan. Ch. Pr. 1563; 2 Barb. Ch. Pr. 132, book 4. ch. 9, § 4; Ladner v. Ogden, 31 Miss. 332; Ward v. Davidson, 2 J. J. Marsh. 443, etc. And in the absence of process the decree was not binding on the parties not thus brought in. Tarleton v. Cox, 45 Miss. 430; Englehard v. Sutton, 7 How. 99.

In Mezeix v. McGraw, 44 Miss. 100, it is said, the chancery practice of this state requires that whenever the complainant shall file an amended or supplemental bill, he shall give notice thereof in writing to the opposite party or his solicitor, within twenty days after the same shall be filed; and no *pro confesso* on such amended or supplemental bill shall be taken without proof of such notice, unless process shall have been served upon the opposite party under the amended or supplemental bill. The reasons for process or notice of a cross-bill would seem to be equally, if not more, cogent than in case of an amended or supplemental bill. It is urged by counsel for the appellees, that the cross-bill was too late and the court erred in permitting it to be filed. In other words, that after the interlocutory decree, the court had not legal right and authority to allow the filing of the cross-bill. As to this point, we apprehend it is within the discretion of the court, down to the moment of the final decree, to be exercised, however, after publication of the evidence, with great hesitation and caution.

What is said by writers on chancery practice on this subject is this: The proper time for filing a cross-bill is at the time of putting in the answer to the original suit, and before issue is joined.

When the filing of a cross-bill is delayed until after

the original suit is at issue, the complaintant in such cross-bill will not be entitled to an order staying the proceedings in the original suit, without showing some excuse for his delay. Yet it is not too late to file a cross-bill if the proofs in the original suit are closed, if the complainant in the cross-bill is willing to go to a hearing on bill and answer, as to the cross-suit.

And the court itself will, sometimes, at the hearing, in its discretion, direct a cross-bill to be filed when it is necessary to bring before the court the rights of the parties and the matters necessary to a just determination. 2 Barb. Ch. Pr. 129, 130, book 4, ch. 9, § 3. In 2 Dan. Ch. Pr., 1650, it is stated, as a general rule, that a cross-bill must be filed before publication of the evidence in the original suit, unless the plaintiff in the cross-bill will go to the hearing upon the proofs already published. Story (Eq. Pl., § 395), repeating the rule stated in Daniel, adds, that "this rule is established to prevent the danger of perjury and the subornation of perjury." He further says: "Publication will be enlarged or postponed for the purpose of enabling the defendant to file a cross-bill, upon special application, showing sufficient grounds to the court for making such an order." In section 396, referring to the rule as to the time when a cross-bill must be filed, Story says: "This rule is a restriction upon the rights of the defendant only, and not upon the authority of the court; for, when it is necessary for the purposes of justice in a particular cause, the court may afterwards direct a cross-bill to be filed."

As the decree in the case of Thornton v. Kersey et al., awarding the payment of the $249.50 to Burford, was not binding for the want of process or notice of the cross-bill, the court was at liberty, in the case of Kersey v. Burford et al., to make such disposition of this money as the facts and equity demanded. In the latter cause this matter was fully developed in the

pleadings, exhibits and proofs, whereas in the former, it received only an *ex parte* hearing and investigation. The decree of the chancellor, so far as it is based upon the evidence, is beyond our control, in this, that he is the judge of the facts, and seeing no error of law in the application of the principles of equity, it follows that the decree must be affirmed.

*Ordered accordingly.*